Douglas R. Weider
James L. Ryerson
GREENBERG TRAURIG LLP
500 Campus Drive Suite 400
Florham Park, NJ 07932
(973) 360-7900
weiderd@gtlaw.com
ryersonj@gtlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SKECHERS U.S.A., INC. and SKECHERS U.S.A., INC. II<br><br>                Plaintiffs,<br><br>        v.<br><br>TOP GLORY TRADING GROUP INC., DP DREAM PAIRS INC., and MIRACLE MILES GROUP, INC.<br><br>                Defendants. | Civil Action No. _____:<br><br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II (collectively, "Skechers") bring this action against Defendants Top Glory Trading Group Inc., DP Dream Pairs Inc., and Miracle Miles Group, Inc., ("Top Glory," "DP Dream Pairs," and "Miracle Miles," respectively; collectively, "Defendants") to address their infringement of certain Skechers intellectual property, and allege as follows:

## NATURE OF THE ACTION

1.     Since it began as a start-up shoe company with a single line of footwear in 1992, Skechers has grown to become the third-largest footwear company in the world. That growth has occurred in significant part because of innovations that enhance the quality, comfort and

performance of its shoes. As a lifestyle and performance footwear company, Skechers is continuously developing new shoe designs and advancing the state of the art so that its shoes have the broadest consumer benefits and appeal.

2.      To protect its innovations, Skechers has sought and been awarded patents from the United States Patent and Trademark Office. Over decades, Skechers has invested hundreds of millions of dollars researching, creating, and promoting its new shoe designs and shoe innovations, supported by representatives including Mr. T, Martha Stewart, Snoop Dogg, Doja Cat, Willie Nelson, Sugar Ray Leonard, Ringo Starr, Britney Spears, Carrie Underwood, Meghan Trainor, Tony Romo, Brooke Burke, Kim Kardashian, Howie Long, and Robert Downey Jr. On the strength of its legally-protected innovations, Skechers has grown to sell its shoes in more than 170 countries and in its more than 5000 retail stores, as well as through its website and numerous third-party websites.

3.      Of particular import here, the United States Patent Office has recognized the innovative nature of Skechers' "Slip-in" footwear, which among other things enables easier donning and removal by consumers, awarding patent protection to certain inventions discovered to be beneficial in connection with such shoes. Skechers invested substantial amounts of time, effort, and financial resources into the development of that pioneering shoe technology, which substantially improves the ownership experience for users of those shoes. Skechers' Slip-in footwear engineers, in particular, developed a shoe design that makes putting on and removing certain types of shoes substantially easier than in the past. Traditionally, when a user wanted to put on a sports shoe, the process often required bending over and using both hands, or using a shoe horn. Skechers' Slip-in footwear designs, however, can substantially facilitate the entry and exit of the foot from the shoe by among other things enabling beneficial deformations in and around

the heel region of the shoe at desired times while also helping to comfortably and effectively secure the foot in the shoe during normal wear.

4.      Skechers has manufactured and sold millions of pairs of shoes in styles embodying the patented technology that is the subject of this complaint. These shoes embody innovative, patented technological developments pioneered by Skechers that, as explained above, significantly benefit Skechers' customers.

5.      Following Skechers' success with its patented technology in the marketplace, Defendants began making and selling shoes that infringe Skechers' patent, in competition with Skechers. Defendants did so without even contacting Skechers to request a license to Skechers' intellectual property protecting the innovations used in those shoes. As demonstrated in more detail below, Bruno Marc shoes infringe Skechers' utility patent claims protecting innovations associated with its Slip-in footwear technology. By this action, Skechers seeks to stop Defendants' patent infringement and obtain appropriate compensation for that infringement.

## PARTIES

6.      Plaintiff Skechers U.S.A., Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 228 Manhattan Beach Blvd., Manhattan Beach, California 90266.

7.      Plaintiff Skechers U.S.A., Inc. II is a corporation duly organized and existing under the laws of the State of Virginia with its principal place of business located at 228 Manhattan Beach Blvd., Manhattan Beach, California 90266. Skechers U.S.A., Inc. II is a wholly-owned subsidiary of Skechers U.S.A., Inc.

8.      Defendant Top Glory Trading Group Inc. is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business located at

9500 Railroad Avenue, North Bergen, New Jersey 07047. On information and belief, Defendant Top Glory also conducts business under the name "Dream Pairs."

9.      Defendant DP Dream Pairs, Inc. is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business located at 9500 Railroad Avenue, North Bergen, New Jersey 07047. DP Dream Pairs owns a number of show brands, including Bruno Marc.

10.      On information and belief, Defendant Miracle Miles Group, Inc. is the parent company of DP Dream Pairs. Miracle Miles is headquartered in Changsha, China, and it has offices in Los Angeles, Chicago, and New Jersey. Its New Jersey office is located at 9500 Railroad Avenue, North Bergen, New Jersey 07047. On information and belief, Miracle Miles' New Jersey office is its principal place of business in the United States.

11.      On information and belief, Mr. Chuan Shan (Brian) Cao is the founder and/or CEO of Top Glory, DP Dream Pairs, and Miracle Miles. Mr. Cao uses his business entities to import, distribute, and sell shoes throughout the United States, including the shoes accused of infringement in this litigation.

## JURISDICTION AND VENUE

12.      Jurisdiction in this Court arises under the provisions of 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks), and 35 U.S.C. §§ 101 et seq. and, in particular, § 271 (U.S. Patent Law).

13.      This Court has personal jurisdiction over Defendants Top Glory and DP Dream Pairs because they were incorporated in the State of New Jersey. This Court has personal jurisdiction over Defendant Miracle Miles because it has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 that place infringing products into the stream of

commerce with the knowledge that such products are sold in the State of New Jersey. On information and belief, Defendants derive revenue from the sale of infringing products within this District, expect their actions to have consequences within this District, and derive revenue from interstate and international commerce.

14.    For Defendants Top Glory and DP Dream Pairs, venue in this Court is proper under the provisions of 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants were incorporated within this District. For Defendant Miracle Miles, venue in this Court is proper because Miracle Miles transacts business within this District and, among other things, offers for sale in this District products that infringe the Skechers patent at issue in this case. On information and belief, Miracle Miles also operates retail stores located in New Jersey that sell infringing products.

## SKECHERS' PATENT RIGHTS

15.    Skechers invested substantial resources and effort into developing innovative technology associated with Slip-in footwear. This technology, which among other things facilitates easier entry into, and removal, of shoes, has been awarded patent protection by the U.S. Patent and Trademark Office.

16.    Skechers owns all rights, title, and interest in and to U.S. Patent Number 12,011,064 (the " '064 Patent"), including the right to seek damages for past, current, and future infringement thereof.

17.    The '064 Patent is titled "Footwear Counter for Easier Entry and Removal," and names John Maxwell Weeks, Scott Kelley, Frank F. Chuang, Pei-Chun Liao, Johnson Tja, Hui Xie, and Kurt Stockbridge as co-inventors.

18.    The '064 Patent was duly and lawfully issued on June 18, 2024. The '064 Patent

has been in full force and effect since its issuance. A copy of the '064 Patent is attached hereto as

Exhibit 1.

## FIRST CLAIM FOR RELIEF
[Infringement of the '064 Patent]

19.    Skechers realleges and reincorporates by reference the full text of all the foregoing

numbered paragraphs as if fully set forth herein.

20.    The '064 Patent, among other things, states that it "generally relates to a heel

counter or a component of a heel counter of a shoe, and in particular a heel counter that is designed

to allow for easier entry of the wearer's foot into the shoe." Ex. 1 at 1:16–19.

21.    As the '064 Patent explains, "[c]onventionally, when donning footwear such as

sports shoes, the user must often use one or both hands or operate a shoe horn separate from the

shoe to properly insert the foot into the shoe and secure the quarter from collapsing under the heel."

*Id.* at 1:23–27.

22.    The '064 Patent states that in "one aspect of the invention, a heel cup may be

uniformly molded with an upper portion, midportion, and lower portion . . . The midportion and

lower portion may form a concave structure configured to receive the heel. The upper portion of

the heel cup has a first configuration in its native state and is capable of distorting into a second

configuration under a load of a user's foot . . . . In the second configuration, at least part of the

upper portion is lowered relative to the first configuration and the upper portion is capable of

returning to the first configuration after the load of the user's foot is removed." *Id.* at 1:34–46.

23.    Skechers is informed and believes, and thereon alleges, that Defendants have

infringed and unless enjoined will continue to infringe one or more claims of the '064 Patent, in

violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling

within the United States, and importing into the United States, without authority or license, shoes that use the inventions described in the '064 Patent.

24.    For example, Bruno Marc shoes including but not limited to the Men's Slip-On Canvas Walking Loafer embody every limitation of at least Claim 1 of the '064 Patent, both literally and under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on an analysis of publically-available information, are preliminary examples and non-limiting.

**CLAIM 1**

**["1. An article of footwear comprising:"]**

25.    The Men's Slip-On Canvas Walking Loafer is an article of footwear.



**["an upper and sole structure;"]**

26.    The Men's Slip-On Canvas Walking Loafer contains an upper and sole structure.

27.    For example, the top portion of the shoe constitutes an upper and the bottom portion constitutes a sole structure.



**["the upper defining a foot receiving shoe opening;"]**

28.    The upper of the Men's Slip-On Canvas Walking Loafer defines a foot receiving shoe opening.

29.    For example, the top portion of the upper creates an opening into which a user's foot is to be inserted.



**["a heel cup attached to the upper and extending from the sole structure to at least a portion of the rear ankle collar of the upper;"]**

30.    The Men's Slip-On Canvas Walking Loafer contains a heel cup attached to the upper and extending from the sole structure to at least a portion of the rear heel collar of upper.

31.    An example of this is shown graphically in the cross-section below.



Ankle Collar

Heel Cup Attached to Upper

Sole Structure

**["the heel cup uniformly molded with an upper portion, midportion, and lower portion where in the upper portion has a smaller mediolateral length than the midportion,"]**

32.    The Men's Slip-On Canvas Walking Loafer has a uniformly molded heel cup with an upper portion, midportion, and lower portion where the upper portion has a smaller mediolateral length than the midportion.

33.    For example, as shown in the side view image below, the heel cup is uniformly

molded, and has an upper portion, midportion, and lower portion.



34.    Further, as shown in the rear view image below, the upper portion of the heel cup

has a smaller mediolateral length than the midportion.



**["and the midportion and lower portion form a concave structure configured to receive the heel;"]**

35.    The Men's Slip-On Canvas Walking Loafer's heel cup has a midportion and lower portion which form a concave structure configured to receive the heel.

36.    For example, as shown below, the concavity created at the base of the heel cup forms a portion of the shoe that is configured to receive the user's heel during normal wear.



**["the heel cup having a rearward facing upper concavity with a first amplitude"]**

37.    The heel cup of the Men's Slip-On Canvas Walking Loafer has a rearward facing upper concavity with a first amplitude.

38.    For example, the heel cup has an upper concavity with a first amplitude (in green) as illustrated below.



**["the heel cup having a forward facing lower concavity with a second amplitude;"]**

39.    The heel cup of the Men's Slip-On Canvas Walking Loafer has a forward facing lower concavity with a second amplitude.

40.    For example, the heel cup has a lower concavity with a second amplitude (in orange) as illustrated below.



Second Amplitude

**["the second amplitude being greater than the first amplitude;"]**

41.    The amplitude of the lower concavity formed by the heel cup of the Men's Slip-On

Canvas Walking Loafer is greater than the amplitude of the upper concavity, as shown below.

- 14 -



First Amplitude v. Second Amplitude

**["the upper portion having a first configuration;"]**

42.    The Men's Slip-On Canvas Walking Loafer's upper has a first configuration.

43.    For example, as shown below the Men's Slip-On Canvas Walking Loafer sits in a first configuration when no outside influences act upon the shoe.

Upper
Portion →


**["the upper portion capable of distorting into a second configuration under a load of a user's foot when the user is donning the footwear;**

44.    The Men's Slip-On Canvas Walking Loafer's upper is capable of distorting into a second configuration under a load of a user's foot when the user is donning the footwear.

45.    For example, as shown below, as a foot is being inserted into the shoe, the force of the user's foot can press upon the upper portion and deform it into a second configuration that is lower relative to the first configuration.

Upper
Portion →



**["wherein in the second configuration at least part of the upper portion is lowered relative to the first configuration;**

46.    In the second configuration of the Men's Slip-On Canvas Walking Loafer, at least part of the shoe's upper portion is lowered relative its position in the first configuration.

47.    For example, as shown below, the heel cup's upper portion is lowered in the second configuration relative to its position in the first configuration.

Upper
Portion →



**["the upper portion capable of returning to the first configuration after the load of the user's foot is removed;"]**

48.    The Men's Slip-On Canvas Walking Loafer's upper is capable of returning to its first position after the load of the user's foot is removed.

49.    For example, once the foot is placed fully into the shoe or once a foot is removed from the shoe, the upper returns to its first position.

**["the heel cup having an upper central portion, a mid-central portion, and lower central portion"]**

50.    The Men's Slip-On Canvas Walking Loafer's heel cup has an upper central portion, a mid-central portion, and a lower central portion.

51.    For example, as shown below, the central portion of the heel cup has an upper portion, a midportion, and a lower portion.



**["the mid-central portion having a first thickness;"]**

52.    The mid-central portion of the Men's Slip-On Canvas Walking Loafer's heel cup has a first thickness.

53.    For example, when measured with a digital caliper, the mid-central portion of the heel cup has a measurable thickness.



**["the upper central portion having a second thickness;"]**

54.    The upper central portion of the Men's Slip-On Canvas Walking Loafer's heel cup has a second thickness.

55.    For example, when measured with a digital caliper, the upper central portion of the heel cup has a measurable second thickness.



**["the lower central portion having a third thickness; and"]**

56.    The lower central portion of the Men's Slip-On Canvas Walking Loafer's heel cup has a third thickness.

57.    For example, when measured with a digital caliper, the lower central portion of the heel cup has a measurable third thickness.



["the first thickness is less than the second thickness and the third thickness."]

58.    The first thickness of the Men's Slip-On Canvas Walking Loafer's heel cup is less than the second and third thickness.

59.    For example, as shown below, when measured with a digital caliper, the thickness of the mid-central portion of the Men's Slip-On Canvas Walking Loafer's heel cup is less than the thicknesses of the upper and lower central portions.



First Thickness          Second Thickness          Third Thickness

60.    Accordingly, the Men's Slip-On Canvas Walking Loafer embodies every limitation of at least Claim 1 of the '064 Patent.

61.    As a result of Defendants' infringement of the '064 Patent, Skechers has been damaged. Skechers is entitled to recovery for damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

62.    Moreover, Defendants' infringing acts and practices have caused and are causing immediate and irreparable harm to Skechers.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Skechers respectfully requests relief against Defendants as follows:

1.      A judgment declaring that Defendants have infringed one or more claims of Skechers' asserted patent;

2.      An order and judgment preliminarily and permanently enjoining Defendants' and their officers, directors, agents, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their subsidiaries, divisions, successors and assigns, from further acts of infringement of Skechers' asserted patent;

3.      A judgment awarding Skechers all damages adequate to compensate for Defendants' infringement of Skechers' asserted patent, including, but not limited to, lost profits, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

4.      A judgment awarding Skechers all damages, including treble damages, based on any infringement, at least since the filing of this complaint, found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

5.      An order awarding Skechers supplemental damages, including interest, with an accounting, as needed;

6.      Costs of suit and reasonable attorneys' fees; and

7.      Any other remedy to which Skechers may be entitled, including under any other law that this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Skechers hereby demands a trial by jury on all issues triable to a jury.

Dated: September 24, 2024

Respectfully submitted,

By: s/Douglas R. Weider

*Of Counsel:*
Morgan Chu
Sam Lu
Benjamin W. Hattenbach
Ian Washburn
Grant Gabriel
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010
mchu@irell.com
slu@irell.com
bhattenbach@irell.com
iwashburn@irell.com
ggabriel@irell.com

Kamran Vakili
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
(949) 760-0991
kvakili@irell.com

*Counsel for Plaintiffs*
SKECHERS U.S.A., INC. and SKECHERS U.S.A., INC. II

Douglas R. Weider
James L. Ryerson
GREENBERG TRAURIG LLP
500 Campus Drive Suite 400
Florham Park, NJ 07932
(973) 360-7900
weiderd@gtlaw.com
ryersonnj@gtlaw.com

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 & 40.1

I hereby certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: September 24, 2024

Respectfully submitted,

By: s/Douglas R. Weider
Douglas R. Weider
James L. Ryerson
GREENBERG TRAURIG LLP
500 Campus Drive Suite 400
Florham Park, NJ 07932
(973) 360-7900
weiderd@gtlaw.com
ryersonnj@gtlaw.com

*Of Counsel:*
Morgan Chu
Sam Lu
Benjamin W. Hattenbach
Ian Washburn
Grant Gabriel
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010
mchu@irell.com
slu@irell.com
bhattenbach@irell.com
iwashburn@irell.com
ggabriel@irell.com

Kamran Vakili
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
(949) 760-0991
kvakili@irell.com

*Counsel for Plaintiffs*
SKECHERS U.S.A., INC. and SKECHERS U.S.A., INC. II